## SCOTT *v.* BROWN.

1. APPEAL AND ERROR—CERTIORARI—RECORD—AUTHENTICATION.

    If no bill of exceptions is settled or required on error to the circuit court, it is not necessary to obtain any certification of the record aside from the certificate of the clerk, signed and sealed, that the copies of the record returned are true copies and his indorsement on the writ of error under seal showing the execution of the writ; and the printed record although faulty is sufficient without any certificate of the judge or clerk, and may be prepared and printed without giving the appellee an opportunity to offer corrections or suggestions.

2. SAME—CERTIORARI—JUSTICES OF THE PEACE.

    The return of the justice in certiorari to the circuit court must be taken as true and conclusive as to material facts stated.

3. JUSTICES OF THE PEACE—RETURN DAY—DISCONTINUANCE.

    In justice court proceedings, failure of a plaintiff to appear within the hour after the time stated in a summons taken out by him, operates as a discontinuance and divests the justice of jurisdiction.

4. SAME—REQUEST FOR CONTINUANCE.

    Plaintiff's oral request by telephone, made before the return hour, to hold the case open until his return later in the afternoon from a journey, was of no force and did not prevent a discontinuance of the case for failure to appear at the proper time under 1 Comp. Laws, § 836 (5 How. Stat. [2d Ed.] § 12284).

5. SAME.

    A judgment for plaintiff, entered by the justice without any waiver on defendant's part of such nonappearance, should have been reversed on certiorari.

Error to Cass; Des Voignes, J. Submitted April 17, 1913. (Docket No. 87.) Decided May 28, 1913.

Assumpsit by Emery Brown against Squire Scott in

justice's court. From a judgment for plaintiff, defendant removed the case to circuit court by certiorari. Judgment for appellee. Defendant brings error. Reversed.

*Clarence M. Lyle,* for appellant.

*Walter C. Jones,* for appellee.

STEERE, C. J. This case is before us on writ of error to review a judgment of the circuit court of Cass county in affirming a justice's court judgment, brought to that court for review by a writ of certiorari issued to Joel J. Nash, a justice of the peace.

On April 5, 1912, said justice rendered a judgment in favor of Emery Brown, defendant in certiorari and appellee here, against Squire Scott, Jr., plaintiff in certiorari and appellant here, for the sum of $107.97.

The errors alleged and complained of in the affidavit for writ of certiorari are, briefly stated, that said justice had no jurisdiction to render said judgment, because a copy of the summons was not served upon said Scott, the original summons being served upon him, and not returned to the justice or filed in the cause; because on the return day neither party appeared within one hour after 10 o'clock a. m., the time set for appearance, nor until after 5:30 o'clock in the afternoon, when the plaintiff only appeared, at which time said justice had lost jurisdiction; because the court heard no testimony, and none was offered, to prove the indorsement of the payee on the back of a note offered in evidence, and on which judgment was rendered, and there was no evidence before the court that said note was assigned to the plaintiff Brown, and defendant Scott did not appear in said cause at any time.

The return of said justice to the writ of certiorari issued from said circuit court, as found in the official

return filed with the clerk of this court, is as follows:

"I, Joel J. Nash, of the township of Marcellus, Mich., the justice of the peace named in the writ hereto annexed, do certify to the circuit court of the county of Cass that before coming to me of the said writ, to wit, on the 28th day of March, 1912, at the request of Emery Brown in the said writ named, I issued a summons directed to any constable of the said county, commanding him to summon Squire Scott, Jr., at my office in the township of Marcellus on the 5th day of April, 1912, at 10 o'clock in the forenoon, to answer to the said Emery Brown in a plea of trespass on the case upon promises, to his damage of $300 or under, which summons on or before the return thereof was delivered to S. W. Winters, a constable of said county, who did not return the said original summons to me, but returned a purported copy of said original summons, with the said constable's return indorsed on said copy of said summons signed by him, and that I am unable to state whether or not said summons was personally served upon said Squire Scott, Jr., except as appears by said return, but that the original of said summons so issued by me was personally served upon said Squire Scott, Jr., instead of said copy. I have not the said original summons in my files in said cause, and have not had the same since its issue, and that said original summons is attached to the affidavit annexed to said writ.

"And I do also certify that at the time and place above specified for the return of said summons on April 5, 1912, at 10 o'clock in the forenoon, I called said case, and neither of said parties appeared before me, and held the same open one hour, and, neither of them appearing before me during said hour, but by request of plaintiff at some time prior to 10 o'clock in the forenoon of said day, made by said plaintiff to me, I held said case open until 5 o'clock in the afternoon of said day, April 5th last, when said Emery Brown, the plaintiff, appeared in person for the first time on said day. Emery Brown, the plaintiff, was sworn, and gave evidence regarding a certain note given by the defendant to G. P. Worden, dated January 17, 1908, and assigned to the said plaintiff, said

note being for the sum of $84.92, and the interest on said note at 7 per cent. for 4 years 2 months and 18 days, to wit, the sum of $24.05, and asked for judgment for the sum of $108.97, and thereupon said plaintiff rested his case, and, the said defendant not appearing, and nobody appearing in his behalf, I did forthwith render judgment in favor of said plaintiff, and against the said defendant for the sum of $108.97 damages and also $2.20 costs.

"And in further answer to the facts set forth in the copy of the affidavit on which the said writ of certiorari was allowed, I do further certify and return in answer to allegation No. 1 in said affidavit I think I had jurisdiction of said cause. In return to the second allegation that the original summons was personally served upon said Squire Scott, Jr., and the copy thereof was returned to me instead of the original summons I think I had jurisdiction of said cause and had right to render said judgment. In return to the fourth allegation therein, I return that the original summons was served as alleged, and is attached to said affidavit and marked 'Exhibit A.' In return to the fifth allegation, I certify that the original summons was not returned to me. In return to the sixth allegation, I certify that on return day of said writ I called the case at 10 o'clock and held it open one hour, and neither of said parties appeared, and I held the same open until half past 5 o'clock in the afternoon, when said Emery Brown appeared for the first time on said day, and said defendant did not appear at all on said day. That the reason I held said case open after 11 o'clock on said day was that some time prior to 10 o'clock on said day said Brown told me that he was going to Cassopolis and would not return until 5:30 that afternoon. That at half past 5 o'clock in the afternoon said Brown appeared and gave evidence in said case as aforesaid. Nobody appeared in said case on said day except said plaintiff. In return to the seventh allegation, I certify and return that said Brown testified that he bought the note, but did not testify that it was G. P. Worden's signature on the back of (the) said note. In return to the eighth allegation, I certify that it was fully answered above. In return to the ninth allegation, I certify and return that the defendant did not appear in said case.

I return the foregoing to said writ. I herewith return said copy of said summons marked 'Exhibit B.'
"Given under my hand, the 25th day of May, 1912.
"JOEL J. NASH,
"Justice of the Peace of Marcellus Township,
"Cass County, Mich."

The affidavit mentioned in said return as the one to which Exhibit A is attached is the affidavit for writ of certiorari served upon said justice with the writ. Said Exhibits A and B, made a part of the justice's return, are identical as they appear in the record, except one is marked "Original" and the other "Copy," and present no peculiarities rendering it necessary to set them out at length. They bear the same date, and both purport to be signed by Joel J. Nash, Justice of the Peace. The indorsement, indicated on Exhibit B, which is designated "Copy," is as follows:

"STATE OF MICHIGAN,  }
  "County of Cass,     }  ss.:
  "I certify that I served the within summons on the 28th day of March, A. D. 1912, on Squire Scott, Jr., the defendant therein named, by delivering to him a copy thereof at the village of Marcellus within the said county.
                              "S. W. WINTERS, Constable.
  "Fee, $0.45."

Counsel for appellee urge, at the inception of this inquiry, that no questions are properly raised for this court to pass upon, and the case should be dismissed with costs, because the record was prepared and printed without appellee having any opportunity to see the same or offer any corrections or suggestions; there is no assignment of error; no exception to findings of the trial court; the record is in fact inaccurate and imperfect, and not authenticated by any certificate of the trial judge or other competent officer. The printed record purports to contain the affidavit for writ of certiorari, the return to the writ, the summons in controversy, and a copy with the return of

the constable indorsed thereon, and the judgment of the circuit judge. It contains no certificate of the judge or clerk of the court, or anything to suggest that it has any official authentication. An examination of the original return filed in the clerk's office, certified to by the clerk of Cass county as being true copies of "the original files and judgment and dates of filing in the case of *Squire Scott, Jr.,* v. *Emery Brown,*" shows that the printed record is not a true copy of the same, being not only defective and inaccurate in numerous nonessentials, but containing matter which does not appear in the original, and omitting some substantive things which do appear in the original, including in the latter classification the opinion of the circuit judge. Where the record is relied upon and no bill of exceptions is to be settled, the execution of a writ of error is made to appear by a return to this court of the writ with a transcript of the record annexed, officially certified by the clerk of the court, presumptively, in the absence of anything to the contrary, done under authority and direction of the judge to whom the writ runs. In addition to certifying properly and officially, under the seal of the court, that the various documents attached are true and correct copies of the originals of record in that court, the clerk has also indorsed upon the back of the writ, under his official seal, that "The execution of the within writ appears by the transcript of record hereto annexed." We think the record is officially authenticated.

In *Lickly* v. *Bishopp,* 150 Mich. 256 (114 N. W. 69), it is said:

"In view of the decisions of this court (referring to certain of them) and of apparent lack of uniformity in the practice, it is proper to say that errors assigned in the affidavit for the writ of certiorari will be considered sufficiently assigned for the purposes of a review by this court, upon writ of error, of a judgment rendered in the circuit court involving errors so assigned."

No suggestion is made that the return to the writ of error does not contain true copies of the files and records in the case, and no application is presented asking further return, for correction of mistakes or to supply omissions. The return of the justice to the writ of certiorari issued by the circuit court must be taken as true and conclusive as to the material facts there stated. No copy of his docket entries is made a part of his return according to the record. He returns unequivocally, and reiterates, that neither plaintiff nor defendant appeared at the time and place said summons was made returnable, nor within one hour thereafter; that defendant did not appear at any time, and plaintiff not until after 5 o'clock in the afternoon, when the case was heard and a judgment entered in plaintiff's favor.

Section 836, 1 Comp. Laws (5 How. Stat. [2d Ed.] § 12284), provides:

"Judgment of nonsuit, with costs, shall be rendered against a plaintiff prosecuting an action before a justice of the peace, in the following cases: 1. If he discontinue or withdraw his action; 2. If he fail to appear on the return of any process, within one hour after the same was returnable; 3. If, after an adjournment, he fail to appear within one hour after the time to which the adjournment shall have been made."

Under this statute it has been repeatedly and positively held that the failure of plaintiff to appear within the hour operates as a discontinuance and divests the justice of jurisdiction to take any further action, except to render a judgment of nonsuit, as the statute directs, and the appearance of the plaintiff within one hour of the time named on the return day of the summons must be affirmatively shown by the docket entries, where there is no appearance of the defendant, or jurisdiction is lost. *Redman* v. *White,* 25 Mich. 523; *Brady* v. *Taber,* 29 Mich. 199; *Johnson* v. *Dexter,* 38 Mich. 695; *King* v. *McKenzie,* 51 Mich. 461 (16 N.

W. 813) ; *Mudge* v. *Yaples,* 58 Mich. 307 (25 N. W. 297) ; *Post* v. *Harper,* 61 Mich. 434 (28 N. W. 161) ; *Talbot* v. *Kuhn,* 89 Mich. 30 (50 N. W. 791, 28 Am. St. Rep. 273) ; *Cagney* v. *Wattles,* 121 Mich. 469 (80 N. W. 245) ; *Schulte* v. *Kelly,* 124 Mich. 330 (83 N. W. 405) ; *Barlow* v. *Riker,* 138 Mich. 607 (101 N. W. 820).

The only reason given by the justice for not entering nonsuit according to the statute is that some time prior to 10 o'clock of that day plaintiff told him he was going to Cassopolis and would not return until 5 or 5:30 in the afternoon, and requested him to hold the case open until plaintiff's return. Although it is stated in the opinion of the trial judge that this communication was by telephone, and counsel state in their brief that it was some time before 10, 8 o'clock in the morning, because the train left for Cassopolis at that time, the record discloses no circumstances of the communication beyond the statement of the justice found in his return as given. It is shown, however, to have been some time before 10 o'clock, the return hour of the summons, and would therefore have no more legal force than if made several days previous. During the hour when the justice was required to keep the case open, he had nothing before him, or with him, to justify a failure to observe the requirements of the statute, but the memory of what the plaintiff had said to him.

It is claimed that this course was authorized by *Wagner* v. *Kellogg,* 92 Mich. 616 (52 N. W. 1017). In that case plaintiff had filed with the justice a written request for a continuance, which, the court held, when presented to or in the hands of the justice within the hour, could be regarded as an appearance in the case. In that case defendant Kellogg, accompanied by plaintiff Woodhouse, had met the justice on his way to his office and discussed the matter, Kellogg saying to the justice, "Give him a judgment, and let him get

away." This court said, speaking of the meeting upon the street, that, inasmuch as there was an appearance in writing, "It is unnecessary to determine whether the conduct of the defendant Kellogg would operate as a waiver if the jurisdiction had been lost."

In the case of *Charles Bakrow & Co.* v. *Totten,* 146 Mich. 59 (109 N. W. 31), plaintiff while going to attend court was detained at a railroad crossing. He telephoned the justice that he was on his way and the occasion of the delay. This was during the hour following the time to which the case had been previously adjourned by consent. Defendant was present, and the justice told him of the message and cause of plaintiff's delay. Plaintiff arrived five minutes after the hour had expired. Defendant remained in court, and made no motion to dismiss the case until plaintiff's arrival, and was then told by him just what caused the delay. Subsequently a motion was made to dismiss for the reason that plaintiff did not appear within the hour. Though plaintiff, while on his way to court, called up the justice by telephone during the hour and personally asked for a brief extension of time to get there, owing to his unavoidable detention, this court did not see fit to hold that he had appeared within the hour, but disposed of the case on the ground of waiver, saying:

"When a defendant does not appear, jurisdiction may be lost by plaintiff's absence, but defendant's presence and omission to either leave, or move to dismiss, before plaintiff's arrival, may justly be treated as a waiver of the point."

In the case at bar defendant never appeared, consented to nothing, and waived nothing; plaintiff did not appear in person, by agent, or written request, and the justice, during the hour in which the case is required by the statute to be held open, had nothing before him, oral or written, in the nature of an appearance. The cases in which this question has been

passed upon since the case of *Wagner* v. *Kellogg* indicate no disposition to relax the rule beyond the holding in that case. In *Barlow* v. *Riker, supra,* where plaintiff had procured defendant's consent to a further adjournment, the court held that it was the duty of the plaintiff to appear and have the case adjourned or jurisdiction would be lost. Plaintiff having failed to do so, the justice waited one hour and, neither party appearing, announced a judgment of nonsuit. Although he had not yet entered the judgment, it was held to be his duty to subsequently do so on demand of the defendant, and that on refusal the entry could be enforced by mandamus.

In reviewing the authorities and discussing the principles involved in this question, Justice HOOKER, in *Schulte* v. *Kelly, supra,* says:

"And we think, also, that, where a plaintiff fails to appear and prosecute his suit, his nonappearance should be held to be voluntary. Neither the opposite party nor the justice is responsible for it, and he stays away with the full knowledge of the legal consequences. The merits of his case are in no way compromised. If he is unavoidably absent, the misfortune is his, rather than another's, and usually his right to bring another action is ample protection."

To hold that the justice can, where neither party has appeared within the hour, continue a case at his pleasure because the plaintiff has orally, and privately, requested him to do so at some previous time is contrary to the clear provisions of the act and the spirit of our decisions. It would amount to saying that the justice could do so whenever he thought the plaintiff would be convenienced thereby or desired it. If he had before him at that hour the written appearance of the plaintiff requesting a continuance there would be something tangible, in the records or files of the case, to substantiate his action. To go further than this would be to negative the purpose and effect of the statute as

construed by previous decisions. We think the justice lost jurisdiction at the expiration of the hour, and had no alternative but to enter a nonsuit according to the statute.

As these conclusions necessitate a cancellation of the judgment for want of jurisdiction, it becomes unnecessary to further consider the other questions raised.

The judgment is reversed.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.